Good morning, Your Honors. My name is Rex Berry. I represent Circuit City, the appellate in this matter. It would be my plan to reserve approximately five minutes for rebuttal. All right. Watch the clock. I will. Thank you. We're here this morning on a very narrow jurisdictional issue. Did the district court err when it declined to assert jurisdiction over Circuit City's petition to compel arbitration based on the existence of the Rooker-Feldman Doctrine? The answer to that question is yes, the district court did err for two reasons. First, the factors that might make the Rooker-Feldman Doctrine applicable to this case simply are absent. Second, there is no basis for abstention, either under the Younger Doctrine or the Colorado River Doctrine, that would preclude the district court from applying jurisdiction. All of these doctrines are doctrines of judicial accommodation. Didn't this case start with McLemore filing suit in state court? Indeed, it did. And didn't you remove it to federal court? We did not. You filed a separate proceeding? It's a separate and independent proceeding. At the state court, you moved to compel arbitration? That's correct. And won? Yes. The other side appealed? Yes. And the Calabar County Court of Appeals said go back and take a look factually at this issue again. And notably did not reverse the superior court. And yet you want to be, as I understand it, in the federal court? Absolutely. Didn't like it. And you read Engel? Absolutely. And there's a general. I know your grounds of what you're about to express, and I guess I'm inquiring as to your motive. Why do you want to be in the federal court with the decisions of the Ninth Circuit Court of Appeals looking right down your throat? That is an excellent question, and I've been. You're glad. I thought of it. I've been dealing with these issues at the Ninth Circuit for several years. The FAA, under which Circuit City is petitioned, is a federal statute. It is our belief that the federal courts are in the best position to interpret and apply the FAA. Even with regard to the Ninth Circuit decisions that have been published, I would point out to the Court there are several unpublished decisions of the Ninth Circuit where Circuit City has prevailed on precisely the same arbitration agreement. Well, isn't this panel bound by the published opinions of prior panels? With regard to the jurisdictional issues, I think that that is correct. We have done to answer your question as to our motive, we have continued to. I'm not sure that's my business, either. Counsel's motive, I don't mean to pry. And I understand. We've succeeded very well in the district courts, even in light of the Circuit City v. Adams case, and Engle currently is on a petition for panel rehearing. So we believe that the federal courts, the federal district courts, are in the best position to analyze the issues that arise under the FAA, which is a federal statute. But your brother, I think, has suggested that not only should, or if we reach this thing, we should go ahead and decide the issue of enforcement of the arbitration agreement. If we do that, how should we come out? In view of the fact that this panel is bound by the other panels of the Ninth Circuit, how should we come out? If you do that, you should come out in favor of Circuit City enforcing the arbitration agreement for the following reasons. Engle is not a final decision. The mandate has not issued. That's why Rooker Feldman doesn't apply, right? I'm sorry? That's probably why Rooker Feldman doesn't apply. I think that's one of the reasons Rooker Feldman doesn't apply. Why shouldn't we under Colorado River simply stay and send you back and let the state court hash this out? For a couple of reasons. Under Colorado River, it's an equitable doctrine. That means we can do it if we want to, but we don't have to. Absolutely, and you shouldn't here for the following reasons. Rooker Feldman nor the Younger Doctrine have any application here because of the unique procedural posture of this case. The only reason Circuit City went to state court initially was because the Ninth Circuit had made an erroneous decision in the first Circuit City v. Adams case holding that the FAA did not apply to employment agreements, arbitration agreements between employers and employees. And until the Supreme Court reversed that, the panels of this circuit were abound by it, and therefore you had to go to state court. We had to go to state court. So you recognize the binding effect of Adams on the federal pathway. Absolutely. Don't you recognize the binding effect of these other opinions? Different issues. Specifically, with regard to the arbitration agreement, a different arbitration agreement is now before this panel than was ever before the court in Circuit City v. Adams. In Circuit City v. Adams, and I'm talking about the remand decision after the Supreme Court decision, the court considered a 1997 version of the agreement that had flaws that the court picked out, damage limitations, concerns about mutuality, those types of issues. Ms. Engel is covered by the current dispute resolution rules and procedures. Now, we briefed this before the district court. It's all in the record. What this court gives – Won't the state court, if we defer or stay or whatever, goes back to state court, won't the state court do exactly what you're talking about? It can, but – What, are you afraid of what they would do? Absolutely not. We have an absolute right to have this matter heard in federal court because diversity jurisdiction exists between the parties to the petition. The Supreme Court has said that if a case is properly filed with the United States district court, that district court has a virtually unflagging obligation to exercise jurisdiction over that case. Even when there's a parallel state proceeding that's deeply involved in the same issue and has yet to reach a conclusion. But we're back in the same place with regard to each proceeding. That's what's important about what the state court of appeals did that the district court missed. Wouldn't adopting your argument encourage foreign shopping, state versus federal? Absolutely not. The reason it would not is we only went to the state court because we had no choice in that. Because you lost. Excuse me? Because you lost. We only went to the state court because we had lost as a result of an erroneous decision by the Ninth Circuit, which was then reversed by the United States Supreme Court. I'm not talking about that loss. You went to federal court, didn't you, after the California court of appeals sent you back to state court? Remanded back for an evidentiary hearing on whether there existed an agreement and what the terms of the agreement were. I don't think that's a loss. It was not a reversal. We were back to square one. Let's call it a tie, then. Okay. After you tied before the California court of appeal, wouldn't we be saying to the state court in California, you don't know what you're doing, you're not capable of resolving this issue? Wouldn't we be saying to employers, and, you know, I've only been on this court nine and a half years, I bet I've seen two dozen Circuit City cases. I don't see two dozen Walmart cases, two dozen Walgreen cases, but I see two dozen Circuit City cases involving various disputes with their employees. Why shouldn't we send this back to state court? For a couple of reasons. First off, the fact that Circuit City aggressively defends its arbitration program should not be held against it. This arbitration program has been upheld by one of the. I just don't want to deprive you, or at least I don't want to deprive you of your right to hash this out in state court. They're perfectly competent people, aren't they? We have the right as a litigant to pick our forum. The federal statutes give us jurisdiction. It's our choice. The reason that choice now. But the abstention doctrines cut across that. I mean, the virtually unflagging language is there, but the abstention doctrines grow and flourish in the face of that language. If I can address the abstention doctrines directly, I think we can look at the, and I may mispronounce this, the Cantanella case that I think that you recently authored. You came up with three criteria for application of the abstention doctrine. One was that state proceedings are ongoing. Two is that important state issues are involved. Three is that there needs to be an opportunity to litigate those federal claims in the state forum. My view is, and Circuit City's view, is that on those first two criteria, this case would fail for application of the abstention doctrine. State proceedings are not ongoing. This is similar to Cantanella in that there is nothing pending. We're back at square one with both places. Well, you got a remand from the court of appeal to the superior court saying do this. And did the superior court say to hell with it? I'm not going to do it? Or why is that still pending? It is pending. The superior court has stayed its proceedings pending the outcome of these federal proceedings. When we filed our federal petition to compel arbitration, the superior court entered a stay of its own proceedings, said, all right, you're in federal court now. Let the federal court adjudicate the petition. Those proceedings are stayed. Nothing is pending. There's absolutely nothing that the district court could do that would in any way alter, modify, or affect any ruling by the state court that's been made to this point. On the second criteria, though, is especially where the abstention doctrine fails, and that is what important state interests are involved. The only interest the district court is being asked to resolve is enforcement of an arbitration agreement under the FAA. That's a federal statute. It does not implicate state interests. In the Mifosky case, the Ninth Circuit years ago looked at what constitutes a compelling state interest. Where you have federal courts being asked to enjoin state courts on constitutional grounds, there, for example, in the Goldie's case, there, for example, you have a situation where you do have important state and federal interests in conflict. This is a private dispute between two civil litigants. And in the Mifosky case, I think the Court made it very clear that normally is not going to rise to the level of a compelling state interest that the state court is in the best position or should be allowed to adjudicate. How are the ‑‑ if at all, are the issues different in state court than in federal court? They would not be because Circuit City's petition in state court was made pursuant to the FAA. Under the Moses H. Cohn case, the Supreme Court has made clear state courts or federal courts are in a position to resolve issues under the FAA. Notwithstanding that, we have a jurisdictional basis under the FAA and under the diversity statutes to elect our forum. You can elect your forum for the case you brought, but can you deprive the state of the case you brought there? I would submit that our forum was selected for us by the Ninth Circuit. I understand that. We went to the state court. It's there. It's there. If you come to the federal court, as you're asking, and the federal court rules with you, what happens in a state court case, I grant you, chances are the judge would say, well, I'm through with that. I've got other work to do, and so I'll go along with what the Ninth Circuit says. But what if they don't? What if they say, well, we don't appreciate their interpreting this contract of ours in our state, and we'll interpret it? As a matter of the facts and record of this case, the Superior Court already has decided clearly it has no problem with this federal proceeding. It has stayed its own proceedings. If we go to the federal court and the federal court compels arbitration under Moses H. Cohn and its progeny, part of that order may well be an order to the state court that says Ms. McLemore's lawsuit is stayed, again, continues to be stayed, pending outcome of the arbitration. The federal court has that much interest in this, to tell the state court, not only are we going to adjudicate it parallel with you, but we're going to adjudicate it and you can't. That's exactly right, because that's what the Supreme Court said in Moses H. Cohn. It said even if you have the situation where potentially there might be piecemeal litigation, maybe there are defendants who can't be brought into the federal action, because of the pro-arbitration public policy under the FAA, we're going to require the federal courts to hear these cases, enforce these agreements where appropriate, even if a result of that is that you may end up with litigation in two parallel tracks. What's your difference in definition between forum selection and forum shopping? Are you selecting or shopping here? A plaintiff or a petitioner is the master of their complaint. We have the opportunity when we file the case, at least in general we had before the Ninth Circuit's decision, Circuit City v. Adams, as to where to file that case. And so you chose to go to state court because you didn't like what the Ninth Circuit had done. Absolutely not. So that's part of your selection. Absolutely not, Your Honor. We went to state court because we couldn't come to the federal court. Yes, because you were going to lose. You were going to lose. That's why you went. So you selected. Okay, so then the Supreme Court says, Ninth Circuit, you're wrong. They show us the error of our ways, and you say, Aha, there's this other forum that was closed to me as a matter of choice, and now it's open, so I'm going to file a parallel lawsuit over there. Why isn't that shopping? Why is that selection? Because I don't believe that the forum selection analysis requires us to undertake a futile act to file a case where we know we're going to get bounced on jurisdictional principles. Now, on that subject, where you know you're going to get bounced, and going back to something earlier, in this Engle case, there was a different employment agreement. Correct. Is that the one you're now litigating? No. You mean you've got a third one? The dispute resolution rules and procedures are modified from time to time. As the law has developed, obviously this is a very rapidly developing area of the law, arbitration law. Those rules have been modified from time to time. Ms. Engle is under an agreement that says when I put in my petition for my request for arbitration, I'm going to be bound by the most current set of rules. Therefore, Ms. Engle, in this case, would be bound by the 2003 dispute resolution rules and procedures. They do not limit damages. They do not require the payment of any extreme or excessive arbitration fees. Circuit City pays the entire cost of the arbitrator's hourly rate. The rules make clear that it is a mutual binding program. Circuit City must bring any claims it has. Those types of things did not exist in the Circuit City Adams case on remand. The Court makes clear in footnote 14, I believe, of that case, that it's looking at a pre-1997 set of rules. In the Engle case, Judge Pregerson said he was applying the post-1998 rules, but the Court specifically did not address the issue of it being the most current rules. And the Court went back in Engle and looked at damage limitations. What was current in Engle? What were the current rules when Engle was fired? When she was fired in 1999. When the suit was filed. Oh, yeah, I guess. When she was terminated in 1999, there was a clause already in the rules at that time that said the most current set of rules should apply. All right, what was the most current at that time? The most current set of rules at the time she applies for arbitration. What that does, that clause gives the benefit to someone applying for arbitration. Sounds to me like after you fire somebody, you can change the rules on them. You can, and that was part of the agreement. Now, if we do something crazy with the rules, obviously there's an obligation of good faith. That's all. On the other side, it says everything you've done with them is crazy. I would respectfully disagree. I mean, I don't think we can make a law saying, now, if they do something crazy, we won't enforce it. Actually, there is law to that effect already in the 24-hour fitness case out of the California courts. I'm not surprised. In the California courts. There is already a law to say something like I just said. What it says is that if you have a modification procedure, it carries with it an obligation of good faith to exercise those modifications in good faith. Now, the record will show that every one of the modifications has benefited Ms. Engel. As arbitration law has developed, the agreement gives the current state of the law those benefits to the party seeking arbitration. If Engel is final, you still have an open issue in this case in the federal, in the Ninth Circuit. Absolutely. All right. I see that I have approximately two minutes left. Unless the panel has additional questions, I would reserve my remaining time. Thank you. Good morning. My name is Rod Bushnell. I represent Joanne Michelle McLemore, the appellee in this matter. What this fight is about is what rules apply, what year. That is what this fight has always been about. That is what the fight is about today. Because under Armidares, which is the California Supreme Court case on unconscionability, Circuit City's earlier rules do not meet the test of conscionability. So what Circuit City does is puts in, even though the employee worked in 98, got fired in 99, they put in 2003 rules, which they've modified, and say these are the rules that apply. In Engel, in response to Judge Hill's question, Engel specifically says, and I think this is really important, because the 1998 rules and procedures were in effect at the time of Engel's civil rights claims arose, we examine these rules in analyzing whether this arbitration agreement is enforceable. They say 1998. Engel's case is exactly like McLemore's case. Engel was sexually harassed in 1998. McLemore was sexually harassed in 1998. Engel and McLemore filed their lawsuits within one week of each other. And so McLemore's claim arose at exactly the same time as Engel's. So not only is McLemore's case legally on all fours, it's factually on all fours with Engel's. What's wrong with an employer changing arbitration procedures if, in the main or overall, they make it more fair, more beneficial to the former employee? Isn't that something we would want to encourage? I think it's something you want to encourage, but I don't think it comports with contractual analysis. The whole basis of holding an employee's feet to the fire on arbitration agreements is that they entered into a binding contract. And then along comes Circuit City and continues to modify the contract without the assent of the employee to do so. It's an illusory contract. But these employment contracts continue to be contracts of adhesion under California law, don't they? Absolutely, and therefore they're procedurally unconscionable. So no employment contract, unless you're hiring a CEO or a chief financial officer or something by negotiation, is going to be enforceable in California, is it? Well, after you look at procedural unconscionability, then you look at substantive unconscionability under Armidares. Well, if you require arbitration, doesn't that make it unconscionable substantively? Make them waive the right to go to court? In Armidares, they set forth several tests about whether the arbitration agreement is fair or unfair. And in this case, looking at the 1998 agreement, which is what the Ingle Court did, they found, the Ingle Court found, that it was unconscionable. Suppose the salary is found to be too low. That was entered into an adhesive contract. Right. If most people get more money for the job than this person did, would that be an unconscionable extraction? I think that the court in Armidares was looking at the substantive issue of unconscionability as it relates to the arbitration agreement. Well, it all goes to the arbitration agreement and Title VII cases. Employment cases, the only place we get Title VII cases, don't we? Right. And the holding is that employment cases are all contracts of adhesion and that requiring arbitration is unconscionable, then? Well, it's a two-step process, Your Honor. I understand that, but I just said two steps, one after the other. Right. Adhesion, procedurally unfair. Exactly. And requiring arbitration and giving up your right to go to court is unconscionable. Isn't that about where we are in this circuit? Yes, in terms of ---- Therefore, no Title VII cases will be subject to compelled arbitration in the Ninth Circuit. Is that the situation? That's a different issue. That's the Duffield case where the issue of Title VII, this is not a Title VII case.  Therefore, you have to get to the second step of armadares and analyze it procedurally. Let me say, to go back to what the fight is about here, it's about what DRA are we going to use. And so that's what the fight ---- that's why they came. Not only did they form SHOP by filing a petition to compel arbitration in state court because Adams was against them. I mean, that's the egregious, most obvious example of form shopping. They even admit it. They say, we're not going to win in federal court, so we're going to state court. Then, in the meantime, after we're battling in state court, Adams comes down differently, and they get an order for an evidentiary ruling to find out which DRA to use, 97, 98, 99, 2000, 2001, five of them that we're dealing with. And at that point, because that's contrary to what they're trying to do, which is always to put in the later DRA and to give up the earlier DRA, they come to federal court. So for the second form shopping reason ---- You seem to be condemning their being willing to waive what the employee finds to be unconscionable. They're willing to waive those things by what they're doing, by saying, let's look at a later version. Each version waives something that was found objectionable in an earlier version, doesn't it? That's right. But Ingalls says you can't do that. You can't waive those things. You're stuck with them. That's right. You're stuck with them. It's kind of a gotcha. And rightly so. I mean, the reason we're here fundamentally is that arbitration agreements are upheld because the employee enters into them. And why should unilaterally the circuit city be allowed to change them without the assent of the employee? And there's a requirement in their own rules that they give 30 days' notice. And one of the issues that came back from the Court of Appeal in the State of California is whether they had complied with their own rules. Again, the issue of the evidentiary hearing. What's really significant about this is that if you look at the petition filed in the United States District Court, they put in the later version. They are not giving up their position that the later version applies. And the State Court of Appeal said you go back to the State Court, you make sure that the record is complete. All the versions are there because they didn't put the original version in when they filed in State Court. So one of the things they're trying to do is they're trying to get out of the evidentiary hearing so that a judge and a court can determine what DRA applies. Therein lies Rooker-Feldman, which is they are challenging that Court of Appeal decision so they don't have to have an evidentiary hearing, so that they can continue to schmooker the courts and say, lookit, this is just the latest version. That's all they put in. They don't put in any of the earlier versions. So I think that Rooker-Feldman applies. And if Rooker-Feldman does not apply, I think abstention applies. But I would add with a caveat, abstention is equitable. And this Court has a right to do the equitable thing in this case. And I would suggest that this Court, given the authority of Engle, which says in exactly the same case, exactly the same facts, even a sexual harassment case, that this Court should decide the substantive issue, relying on Engle, find that the agreement in this case is unconscionable, like in Engle, and send this back to State Court for the trial that my client deserves. Could the State court, left to its own devices, could it determine that the most appropriate arbitration procedures to decide upon would be the later ones? They could. I know you will argue to the contrary. But they could. I mean, the only – the only – as Mr. Berry has said, this is a developing area, particularly with respect to Circuit City DRAs. But Engle says for the first time – Engle is the first time a court has come out and said, you apply the DRA when the claim arose. They say it. It's right in the opinion. And that is the struggle that I have been fighting with. And that's what you urge, that your client is bound by a less favorable agreement than your opponent wants to bind your client to. Yes, exactly. You want your client bound to the least favorable agreement. No, I want my client bound to 1998. Which is the least favorable agreement. No, it's more favorable. And not be given the benefit of the later agreement. Is that your position? Right. But it's not least favorable. Now, if they hold that it goes to arbitration, would you opt for the later version? Absolutely not. My position is – You still want your client bound by a more unfavorable version. No, it's not unfavorable. It's more favorable. 1998 is unconscionable. I want a jury trial. Make no mistake. I don't want to go to arbitration. I want to go to a jury trial. And I say that you measure the DRA in this case by 1997, the year she signed on with Circuit City, or 1998, the year that the claim arose. Well, she gets the benefit of her bargain of adhesion. That's right. But what is more fair than to say that you're going to bind my client to arbitration? Throw me in the briar patch because that's unconscionable. Right. And that's my argument. And therefore, we should get by the procedural barriers in this case, get to the chase, declare it unconscionable, send me back to Alameda County, and let me get out. But we don't have to do that. No, I know you don't. But that's what I'm saying, that if you get to abstention, that since it's an equitable doctrine, that you can get by abstention and get to the meat of the case. But some courts not bound by prior decisions of the Ninth Circuit have held that some of these questions of what should not be enforced in it are up to the arbitrator, haven't they? I think the issue of whether the agreement is unconscionable or not is a judicial decision and not an arbitration decision. I will submit it unless there's further questions. All right. Thank you. You had some time left, I believe. Very briefly, Your Honor. We put the cart before the horse. This was a jurisdictional issue before the court. The district court has not had the opportunity to pass on the various questions that this panel has raised. Is it in the record? Absolutely. Can this panel get to those issues? Absolutely. Should it? It should not. Let the district court pass on these issues of application of Engel, application of Armendariz, which rules the district court will be in the best position to hold a full evidentiary hearing, which oddly enough is exactly what the state court wants to do, on the issue of the making of the arbitration agreement. From a jurisdictional standpoint, it's appropriate for this court to require the district court to address the merits of this claim. With regard to the questions about the rules on the substantive merits of the case, ever since 1995 when this program was put into effect, there has been a modification clause. When Ms. Engel signed it in 1997, she agreed to a clause that said this agreement can be modified. If there is a dispute as to whether it was properly modified or not, again, the district court would be in the best position to resolve that issue. Does that mean that there was no contract? Absolutely not. Isn't that a one-sided contract that you can make it read anything you please after it's been signed? Absolutely not. In the employment context between employers and employees, the world is full of agreements that provide for modification. Handbooks have been held to be agreements between employers and employees. The 24-hour fitness case out of the California Court of Appeals I mentioned, they included an arbitration provision in a handbook. The court said that's a contract just like any other contract. They agreed at the outset it could be modified. We're going to engraft on that an obligation of good faith. Employer, if you do something crazy, we're probably not going to uphold that. But parties can agree to future modifications of their contracts. Even though they're not parties to the contract any longer? They're still parties to that contract. That contract applies to applicants. But she was fired in 1999. Does not change her agreement. It's the arbitration agreement. The agreement, she signs the agreement in 1997, gets fired in 1999, and the agreement as it read when she signed it says, even after I'm fired, the employer can change the agreement and I'm bound by all those future changes. Provided that the employer changes the agreement, modifies it in the way that is set forth in the agreement. In the Sixth Circuit, the Sixth Circuit recently in the Morrison case upheld that exact provision and said the fact that Circuit City could only change the agreement at a certain time and in a certain way makes it, shows consideration for the modification provision. In the Eighth Circuit, in the Gannon case, the modification provision was upheld. Also what exists. Thank you. Your time has expired. Thank you. The case just argued will be submitted.
judges: Hill, Tg Nelson, Hawkins